[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 497 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 498 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 499 
The plaintiff seeks to recover upon an agreement which, by its terms, was not to be performed within one year from the making thereof. It can do so if the agreement, *Page 501 
or some note or memorandum, is in writing and subscribed by the party to be charged thereby. (2 R.S., 135, § 2 [as amended, Laws of 1863, chap. 464, p. 802], sub. 1.)
In this case the party to be charged, and whose subscription is needed, is the defendant, a municipal corporation. It is plain that such a defendant can make no note or memorandum, nor subscribe the same, save by an officer or agent thereof. It is so, also, that it ordinarily acts by its legislative or governing body, and that the action of that body is expressed in the minutes of its action, recorded, as it takes place, in the books kept for that purpose by its clerk or secretary. Hence it is that its agreements are rarely oral, but, pari passu with the making of them, they are on the instant of formation put into writing, and thus a note or memorandum of them is made; and the minutes of the day's doings of the body, being signed by the clerk thereof, there is a subscription of the note or memorandum, made by the party, by its agent duly authorized. This is a satisfactory compliance with the statute. It meets the purpose and intention of the law, by providing an enduring and unchanging evidence of the agreement; and it meets its letter, for there is some note or memorandum of it in writing, subscribed by the party to be charged thereby, the subscription made by an authorized agent. And so are the authorities. (Johnson v. Trinity Ch. Society,
11 Allen, 123; Tufts v. Plymouth Gold Mining Co.,
14 id., 407; Chase v. City of Lowell, 7 Gray, 35; Dykers v.Townsend, 24 N.Y., 57.)
The resolution of the 26th January, 1863, is a full note or memorandum of an agreement as to the work which the defendant agreed to have done. Nor did this resolution expire by any limitation of its own, at the end of three years from its adoption, and so require a new passage to be still operative. Until rescinded in terms, it was lasting in its expression of a determination by the city to have its printing done at certain rates, by one daily paper to be designated by the city. It was this designation, only, which had a limit to a term of three years. The resolution, as to all but the party *Page 502 
with whom the agreement was to be, was perpetual, unless rescinded by action of the city; and it needed nothing but the designation of some daily paper, at the end of each term of three years, entered upon the daily minutes, signed by the clerk, to do all which the city need do, to make a note or memorandum in writing, subscribed by the party to be charged thereby.
The resolution of 15th January, 1866, also recorded in the minutes and signed by the clerk, designating anew the plaintiff's daily paper, started another term of three years. For the agreement was already there, save the name of the party to be agreed with, and that this resolution supplied.
Nor did this last resolution need to be passed with a call of the ayes and nays, and they entered upon the record. It was not a law or a resolution involving an appropriation or payment of money for any purpose. (Laws of 1848, chap. 139, p. 217, § 1.) The purpose was decided upon by the former resolution. The design of the provision of the act of 1848, is to expose to accountability to the public, those who in places of public trust, sanction new objects and purposes for expenditure of public money. An expenditure having been once determined upon, it does not again involve it, that by resolution one is selected to do the work, any more than where an office under the city government, having been created by resolution and a compensation having been attached to it, by a subsequent resolution one is named to fill it.
Nor does the resolution contemplate that the chamberlain is to negotiate for the publication of the proceedings of the board at a sum less than $1,000. It is a proposal — in connection with the other resolution, designating the plaintiff's paper as the official organ — to the plaintiff, to pay it not to exceed $1,000 for doing certain work; the plaintiff's answer is an acceptance of that sum and an agreement to do the work therefor. It is different from Haydock v. Stow (40 N.Y., 364). That was a power intrusted to an agent, with a minimum limit of price, but no maximum; and hence the duty *Page 503 
of the agent to his principal to obtain more if he might. This is an offer by one party to another, which the other accepts without intervention of an agent, and the maximum compensation named is the compensation agreed for. Besides, the direction to the chamberlain does not contemplate any change of the terms of the resolution; he is directed to enter into a contract accordingly,i.e., in the terms specified in the resolution. Moreover, before the second resolution of designation, he has already done his duty in making the contract, with which the defendant is satisfied. The second resolution, of January 16, 1866, is an offer by the defendant to renew it for another term of three years; and so the defendant does not remain free from obligation, under that resolution, until the chamberlain has again entered into a contract. The contract which he was directed to make, expressing no more in fact than the resolution of 1863, was satisfactory to the defendant. The defendant, agreeing to the terms of that resolution and contract, by the resolution again designating the daily paper of the plaintiff, proposed to it to renew the same for another term of three years. As soon as the plaintiff signified in writing its acceptance of that proposal, the contract was renewed for another three years' term, and, as we have seen, was legally embodied in writing, and was subscribed according to the statute. A letter from a party to be charged, specifying the terms of an agreement, and directing an assignment to be drawn in accordance with it, is a good memorandum of the contract, though the assignment never be made. (See Smith v.Watson, cited in Gibson v. Holland, Law Rep. [1 Com. Pl.], 6.) The common council did not contemplate not being bound, until a contract other than the resolutions and some acceptance of it was made. Those cases which have turned on such point, have been where a further contract was needed to express the details of the bargain, where those had yet to be arranged between the parties.
Nor does the fact that the rates for printing and binding are not expressed, but reference is made to something outside *Page 504 
of the contract, and which must be established by parol testimony, invalidate the contract. This contract is not so much open to objection for this cause, as if no price was expressed, nor reference made to anything by which it might be determined, and the parties were left to proof of a quantum meruit. Yet, in such case, a memorandum has been held to be in compliance with the statute. (Hoadly v. McLaine, 10 Bing., 482; Ashcroft v.Morrin, 4 M. G., 450.) The first resolution does not require that the chamberlain ascertain what the current rates are, when he enters into his contract, and make them the rule of compensation the three years through. What he is to do, if he does aught, is to put into his contract the phrase of the resolution. For the designation and the contract is for three years; and the rates current at the beginning of the term, may be quite different from those current in any other part thereof. Yet it is for the rates current in the city, at any time and at all times through the term of three years, that the defendant contracts, willing to pay its designated official paper so much and no more, and asking work for no less than at the terms current for the same service, in the city where the work is done, from time to time.
Nor is the idea that there was no delivery to the plaintiff of the resolution of 1866, one that can prevail. There had once been delivery of the same agreement and performance of it by both parties. It was not changed. The resolution of 1866 was but a proposal to the plaintiff to renew it. It was adopted 16th January, 1866. The first term of three years did not end until 26th January, 1866. Until that day, under the first contract, all proceedings of the common council were reported for, delivered to, and published in, the paper of the plaintiff. The resolution of January, 1866, at once on its passage, was reported for and delivered to the plaintiff, to the knowledge of the defendant's agents. Nor is it always needed that there be delivery to the other contracting party, to bind the one who is sought to be charged by the note or memorandum. Where one, by his agent, has dealt with another, a written communication to the agent, *Page 505 
reciting the terms of the agreement made by the agent with that other, and ratifying the same, will answer the statute. (Gibson
v. Holland, supra.) And so will a written communication to the other, expressive of the terms, yet repudiating an obligation. (Bailey v. Sweeting, 9 C.B. [N.S.], 843.) The plaintiff did accept the proposal for a renewal, by filing its written acceptance with the clerk of defendant. The clerk had no authority to make a contract or to assent to a proposition for one. But he was the custodian of the papers of the common council, and an organ of communication between it and those not members of it. It also accepted it, by acting under it to the knowledge and with the assent of defendant's agents. (Smith v.Neale, 2 C.B. [N.S.], 66.)
The plaintiff has a good cause of action on the contract; but for the reason given by the General Term, it was proper that there should be a new trial, rather than judgment absolute ordered in that court. But there being a stipulation under the eleventh section of the Code, on appeal to this court, the order of the General Term should be affirmed, and judgment absolute for the plaintiff.
All concur, except GROVER and RAPALLO, JJ., dissenting.
Order reversed, and judgment accordingly.